**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 4, 2026

LETTER OPINION AND ORDER

Re: *ScriptSourcing, LLC, et al. v. Continental Casualty Company*
Civil No. 26-cv-00559-JRR

Dear Counsel:

This letter concerns multiple discovery disputes raised by the parties: the proper scope of discovery, the timing of certain discovery, and the adequacy of Defendant's discovery responses. *See* ECFs 20-21, 25-26. On July 28, 2026, Judge Rubin referred this matter to me for all discovery. ECF 22. On August 5, 2026, the Court held a telephone conference with the parties after receiving their letters reflecting the disputes and requesting a pre-motion conference. *See* ECF 24. At the conclusion of the conference, upon the parties' request, the Court directed the parties to file brief submissions—no longer than five pages—addressing the various disputes mentioned during the teleconference. *Id*. The parties timely filed their submissions in accordance with the deadlines. ECFs 25, 26. Having reviewed the supplemental correspondence, the Court finds no additional hearing necessary and addresses the disputes in this letter opinion. *See* L.R. 105.6 (D. Md. 2025).

Plaintiff ScriptSourcing provides clients with "advice and strategies regarding how the client can save money in the implementation of their prescription drug plan." ECF 25, at 1. Plaintiff Gary Becker is the CEO and sole employee of ScriptSourcing. *Id.* Plaintiffs purchased a professional liability policy from Continental Casualty Company ("Defendant"); this policy provides coverage for damages arising from Plaintiffs' professional services, specifically "consulting services." *Id.* In an underlying, related case, ScriptSourcing and Becker (among others) are defending against allegations concerning the importation and sale of foreign prescription medications. *Gilead Sciences, Inc. et al. v. Meritain Health, Inc. et al*, No. 24-cv-03566-JRR (filed Dec. 10, 2024). Plaintiffs claim that the wrongful acts they are accused of arise from "consulting services" that are covered by the insurance policy. ECF 25, at 1. In filing the present declaratory judgment action, Plaintiffs seek declaration that Defendant, as their insurer, has a duty to defend them in the underlying *Gilead* case. *See* ECF 1.

The dispute letters raise multiple issues, and the discussion on the conference call identified others. Thus, the parties' submissions address three matters: (1) whether Defendant is entitled to discovery of any "extrinsic evidence" concerning whether a duty to defend exists (and, relatedly, the sufficiency of Plaintiffs' responses to certain discovery requests), (2) when Plaintiffs must provide discovery concerning the alleged damages in this case, e.g., defense counsel's invoices in connection with *Gilead*, and (3) whether Defendant's responses to fact interrogatories by referencing other records is proper. The Court will address each of these in turn.

### A. DUE TO THE "EIGHT CORNERS" RULE, DISCOVERY ON EXTRINSIC EVIDENCE IS NOT PROPORTIONAL TO THE NEEDS OF THE CASE ABSENT SOME ARGUMENT OR OTHER INDICATION THAT A CONTRACTUAL AMBIGUITY EXISTS.

Defendant claims that Plaintiffs "have refused to respond to numerous interrogatories and document requests on the basis that they should not be required to provide anything they consider extrinsic evidence, encompassing anything beyond the underlying complaint and the insurance policy[.]" ECF 26, at 1. Defendant argues that the Federal Rules of Civil Procedure are broad and allow it to seek any information that is reasonably calculated to lead to the discovery of admissible evidence, which includes anything relevant to its defenses. *Id.* Plaintiffs counter that in determining whether an insurer has a duty to defend, Maryland law follows the "eight corners rule," rendering much of Defendant's requested information unnecessary to resolve the merits. ECF 25, at 2.

In Maryland, the "eight corners rule" commands that "only the underlying complaint and the insurance policy could be consulted to determine the potentiality of coverage." *Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 372 (4th Cir. 2006). In applying this rule, courts engage in a two-step inquiry to assess whether an insurer has a duty to defend. *Id.*; *N. Ins. Co. of New York v. Baltimore Bus. Commc'ns*, 68 F. App'x 414, 417 (4th Cir. 2003). First, the court must determine "what is the coverage and what are the defenses under the terms and requirements of the insurance policy[.]" *Cowan Sys.*, 457 F.3d at 372 (quoting *Montgomery Cnty. Bd. of Ed. v. Horace Mann Ins. Co.*, 383 Md. 527, 538, 860 A.2d 909 (Md. 2004)); *Northern Ins.*, 68 F. App'x at 417 ("the court must first determine the extent of insurance coverage by reviewing the policy's terms, conditions, and requirements"). Second, the court must determine whether "the allegations in the [underlying] tort action potentially bring a tort claim within the policy's coverage[.]" *Cowan Sys.*, 457 F.3d at 372 (quoting *Horace Mann Ins.*, 383 Md. at 538, 860 A.2d 909); *Northern Ins.*, 68 F. App'x at 417. "If a potentiality for coverage exists, the insurer is obliged to defend its insured even though the cause of action cannot possibly succeed, either in law or in fact." *Northern Ins.*, 68 F. App'x at 417 (citing *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408, 347 A.2d 842, 850–51 (Md. 1975)); *see also Cowan Sys.*, 457 F.3d at 372 ("[A]ny doubts about the potentiality of coverage must be resolved in favor of the insured.") (citing *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 16, 852 A.2d 98, 106-07 (Md. 2004)).

The impact of the rule is straightforward: "in deciding whether to defend, an insurer may only rely on the language of the policy and the facts alleged in the complaint, and not on outside evidence, as that would risk deciding the question on facts not advanced in the underlying action." *Cowan Sys.*, 457 F.3d at 372 (observing that the "asymmetrical prohibition on the use of extrinsic evidence by the insurer" prevents a reliance on outside evidence that "would risk deciding the [coverage] question on facts not advanced in the underlying action") (citing *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 111, 651 A.2d 859, 866 (Md. 1995)). "The rule against permitting the insurer to utilize extrinsic evidence seems to serve several interests. Most notably, it precludes the insurer from circumventing the potentiality rule by attempting to litigate the merits of an underlying lawsuit in the coverage action; any potentiality for coverage triggers the duty to defend." *Northern Ins.*, 68 F. App'x at 418. The Fourth Circuit explained that extrinsic evidence

may only be used in two instances: (1) where the underlying tort plaintiff amended its allegations against the insured; and (2) if there is uncontroverted extrinsic evidence from the underlying lawsuit that clearly establishes that the allegations are beyond the scope of coverage. *Id.* at 418.[1]

Neither party cites a case in this or a Maryland state court applying these considerations in the discovery posture. However, the Court observes that Virginia, like Maryland, follows the "eight corners rule" when determining an insurer's duty to defend. *See Builders Mut. Ins. Co. v. Parallel Design & Dev. LLC*, No. 4:10cv68, 2010 WL 6573365, at *2 (E.D. Va. Oct. 5, 2010). In *Builders Mutual*, the court concluded that "ordinarily, the only facts relevant to a court's inquiry into an insurer's duty to defend are the terms of the insurance policy and the allegations of the underlying complaint with respect to which the insured seeks a defense from its insurer." *Id.* As a result of the "eight corners" rule, the court granted a motion for protective order—and thus denied discovery via interrogatories and requests for production—where the parties did not identify "a material ambiguity on the face of the policy" justifying a need to rely on extrinsic evidence in resolving the coverage issue. *Id.* In Virginia, "[w]hen the language of the policy is clear and unambiguous, courts do not employ rules of construction, rather, they give the language its plain and ordinary meaning and enforce the policy as written." *Id.* (citation omitted). Likewise, Maryland's application of the "eight corners" rule demands that "ordinary principles of contract interpretation apply." *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655, 796 A.2d 758, 772 (Md. 2002); *see also Walk*, 382 Md. at 14, 852 A.2d at 106. That is, if "no ambiguity in the terms of the insurance contract exist, a court has no alternative but to enforce those terms." *Megonnell*, 368 Md. at 655, 796 A.2d at 772. Thus, the Court finds *Builder's Mutual*, while not applying Maryland law, persuasive in this context.

Notwithstanding that this is a discovery matter and not a dispositive motion, the submissions do not suggest that the policy is ambiguous. On the contrary, Defendant articulates reasons for concluding—based on information currently known—that the alleged actions by ScriptSourcing involve advertising and thus fall outside the scope of "consulting services" as defined by the policy, "removing any potentiality of coverage." ECF 26 at 3. Then, Defendant says that the "allegations provide a separate and independent basis to establish that there is *no potential* for coverage under the Policy." *Id.* (emphasis in original). In general, the only facts relevant to the duty to defend are the terms of the insurance policy and the allegations of the underlying *Gilead* case—terms and allegations that Defendant says, with certainty, establish an absence of potentiality. Absent the parties' suggestion or representation, I find no reason to suggest the existence of some ambiguity creating a need for discovery into extrinsic evidence and, in the process, encroach upon the ultimate question to be decided by Judge Rubin. *See Cochran*, 337 Md. at 104, 642 A.2d at 862 (applying the ordinary and accepted meaning of the terms in the policy without extrinsic evidence to establish the scope and limitations of coverage available under the policy); *Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*, 324 Md. 44, 56, 595 A.2d 469, 475 (Md. 1991) (stating that in a declaratory

---

[1] *Cowan*, a published decision, makes no mention of the exceptions described in the unpublished *Northern Insurance* opinion despite the insurer's attempt to rely on extrinsic evidence in *Cowan*. Even so, based on a review of both cases and the authority cited therein, *Northern Insurance*'s summary of Maryland law is persuasive and prudent to follow, even if it is non-binding.

judgment action brought to determine coverage under an insurance policy, "it is the function of the court to interpret the policy and decide whether or not there is coverage") (internal quotation marks and citation omitted).

The Court emphasizes three considerations underpinning this conclusion. First, the Court is mindful that the Federal Rules of Civil Procedure place considerable weight on not just relevance to a claim but also proportionality. Fed. R. Civ. P. 26(b)(1). Because it is unlikely that extrinsic evidence may be introduced absent some ambiguity, the Court does not find Defendant's requested scope proportional to the needs of this case. *Cf. Cowan Sys.*, 457 F.3d at 375 (finding that in making certain arguments, the defendant "runs afoul of the Maryland rule which prohibits the insurer from introducing extrinsic evidence to determine the potentiality of coverage"); *Baltimore Gas and Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540, 572, 688 A.2d 496, 511-512 (Md. Ct. Spec. App. 1997) (collecting authority standing for the proposition that it is the duty of an insurer to "undertake the defense, until it could confine the claim to a recovery that the policy did not cover"). If Judge Rubin determines that the policy is ambiguous, the Court may extend discovery. *See Applied Signal and Image Tech., Inc. v. Harleysville Mut. Ins. Co.*, 216 F. Supp. 2d 534, 537 (D. Md. 2002) (declining to extend time for the purpose of discovery regarding fees and costs until after the question of coverage is resolved). Absent a finding that the contract is ambiguous, the discovery of extrinsic evidence is neither relevant nor proportional to the allegations in this case. *See Builders Mut.*, 2010 WL 6573365, at *2 ("the information sought by [the defendant] is not relevant and therefore not discoverable unless [he] can first establish the existence of such a material ambiguity").

Second, and dovetailing with the first consideration, the Court is mindful of the policy behind the "eight corners rule." As the Fourth Circuit explained, a primary interest served by Maryland's rule is to "preclude[] the insurer from circumventing the potentiality rule by attempting to litigate the merits of an underlying lawsuit in the coverage action; any potentiality for coverage triggers the duty to defend." *Northern Ins.*, 68 F. App'x at 418. Courts have acknowledged that an insured should not, in this posture, be "forced to take a position adverse to its own interests, i.e., that it is liable to the tort plaintiff in the underlying action." *Northern Ins.*, 68 F. App'x at 418 n.6 (citing *Baltimore Gas*, 113 Md. App. At 568, 688 A.2d at 509-10)). Were I to permit the broad discovery Defendant seeks, Plaintiff would not only incur the cost and risk of litigating the underlying tort claim twice, it may be forced into that very position the courts have expressly sought to avoid. *See id.* (noting, in addition to avoiding an insured to take an adverse position, the interest in avoiding duplicative litigation).

Third, the Court does not find that either exception articulated in *Northern Insurance* necessitates broad discovery here. Most significant, the Fourth Circuit spoke of "*uncontroverted* extrinsic evidence from the underlying lawsuit that clearly establishes that the allegations are beyond the scope of coverage." *Id.* (emphasis added). For this second exception, the Fourth Circuit invoked the recognition that "a court is not obligated to 'turn a blind eye where [it is established] that an insured tortfeasor is excluded from coverage under [the] particular terms of the insurance policy." *Id.* (quoting *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122,

151, 761 A.2d 997, 1012 (Md. Ct. Spec. App. 2000)) (alterations in original).[2] A look at *Lowe* explains why the Fourth Circuit paraphrased this exception by using the adjective "uncontroverted." The *Lowe* court spoke of it being appropriate to consider whether in that case "it is firmly established by judicial decree" that coverage did not exist. 135 Md. App. At 151, 761 A.2d at 1012. *Northern Insurance*'s paraphrase recognizes that perhaps judicial decree is not the only manner by which an issue may be "firmly established" but still demands the sort of extrinsic evidence that is not subject to material dispute within the confines of a coverage action. Defendant references the existence of a signed stipulation, publicly available (and thus likely already in Defendant's possession), "restraining [Plaintiffs] from engaging in the services that fall outside of the meaning of 'consulting services,' including the importation, advertising, purchase and distribution of particular products." ECF 26 at 3. Assuming this is true, Defendant appears equipped to avail itself of *Northern Insurance*'s "uncontroverted extrinsic evidence" language should the Court find it necessary to reach beyond the "eight corners." The existence of the publicly available document does not convince me that broad discovery into disputed matters is appropriate, especially when Defendant has suggested multiple reasons that the information currently available "clearly" establishes the coverage question.

Taking all three of these considerations into account (with no single consideration being dispositive), I conclude that greenlighting the production of all underlying discovery in *Gilead*—and, as a result, duplicative litigation—as well as the additional requested information is not justified. Unless and until the Court determines an ambiguity exists, preventing resolution through the "eight corners rule," the discovery sought by Defendant—with one exception noted below—is not relevant and proportional. *Builders Mut.*, 2010 WL 6573362, at *2. Therefore, the Court agrees with Plaintiffs regarding the proper scope of discovery at this time. Therefore, Plaintiffs will not be required to supplement their responses to Defendant's requests for interrogatories or document production. If the Court finds an ambiguity in the provisions and thus must resort to extrinsic evidence, discovery of the sort Defendant seeks may be appropriate.

### B. DISCOVERY ON INVOICES MAY COMMENCE AFTER RESOLUTION OF WHETHER A DUTY TO DEFEND EXISTS.

The parties agree on the discoverability of Plaintiffs' counsel's invoices reflecting costs incurred in defending *Gilead*. But they disagree about the timing of such discovery. *See* ECF 25, at 4; ECF 26, at 4. Defendant argues that there is no basis to delay disclosure of the invoices when they can easily be prepared now. ECF 26, at 4. Plaintiffs counter that Defendant has not established why it is entitled to this discovery now and argue that discovery should be bifurcated such that damages discovery occurs after the Court resolves the coverage question. ECF 25, at 4. Plaintiffs do not dispute that if they obtain a declaratory judgment that Defendant has a duty to defend, Defendant must receive the invoices from the underlying suit. *Id.*

As noted above, the Court retains broad discretion in managing discovery, including the

[2] There being no meaningful argument that the first exception applies, the Court does not address it.

timing or sequence, as provided by Federal Rule of Civil Procedure 26(d). For reasons stated above, the Court concludes that the invoices are not relevant to the declaratory judgment question because they are neither the insurance policy nor the underlying complaint. While recognizing potential benefits in both parties' views on timing, the Court concludes that bifurcation is appropriate based on the nature of the claim in this case, its ruling on the scope of discovery, and the Federal Rules' aim to facilitate speedy and inexpensive resolution of litigation. As Judge Blake explained in *Applied Signal* when denying the insurer's motion seeking additional time for discovery before summary judgment, "information about [the insured's] actual fees and costs is relevant only if [the insurer] has an obligation to defend." 216 F. Supp. 2d at 537. Thus, should Plaintiffs prevail on the coverage issue, the Court can provide a schedule governing discovery on damages. *Id.* Plaintiffs are, no doubt, aware of a duty to preserve information regarding damages and provide the same if a duty to defend exists.

### C. SOME OF DEFENDANT'S INTERROGATORY RESPONSES REQUIRE SUPPLEMENTATION.

Plaintiffs take issue with Defendant's responses to Interrogatories Nos. 4, 5, 8, 9, 13, 14, 15, and 16, in which Defendant directs Plaintiffs to documents rather than answering the questions posed with only a narrative. ECF 25, at 4; *see also* ECF 25-1, at 3-13. To support their position, Plaintiffs rely on two cases to illustrate the severity of the alleged insufficiency. ECF 25, at 4 (citing *SEC v. Elfindepan, S.A.*, 206 F.R.D. 574 (M.D.N.C. 2002) and *Red-D-Arc, Inc v. AMP 2 LLC*, No. 6:24-cv-1087-LHP, 2025 WL 26648 (M.D. Fla. Jan. 3, 2025)). Plaintiffs insist that "[t]here is no way that [they] can determine from reviewing those documents [listed in the responses], on which facts contained in any of them [Defendant] intends to rely to support its asserted defenses." ECF 25, at 4. Defendant argues that its responses satisfy Federal Rule of Civil Procedure 33(d) in that it "provided sufficient detail explaining its positions in this matter by highlighting specific allegations in the underlying complaint and provisions in the Policy, as well as identifying ***specific*** documents supporting its position." ECF 26, at 5 (emphasis in original). Defendant distinguishes Plaintiff's authority on the basis that those two cases involved unreadable text messages, illegible handwritten notes, and a "document dump[,]" none of which can be ascribed to Defendant's responses. *Id.*

Federal Rule of Civil Procedure 33(d) permits interrogatory responses to reference business records as all or part of the answer as long as the responses "(1) specify the records in sufficient detail to enable the proponent to locate and identify them as readily as the respondent, and (2) give the proponent a reasonable opportunity to examine and makes copies of such records." *Schaeffer v. Mayor and City Council of Baltimore*, No. CCB-22-01539, 2023 WL 4421407, at *2 (D. Md. Jul. 10, 2023).

> In the Fourth Circuit, district courts have adopted a two-part test when analyzing a Rule 33(d) dispute. First, the moving party on a motion to compel must "make a prima facie showing that the use of Rule 33(d) is somehow inadequate to the task of answering discovery." *Hillyard Enters. v. Warren Oil. Co.*, No. 5:02-cv-329, 2003 WL 25904133, 2003 U.S. Dist. LEXIS 27922 (E.D.N.C. Jan. 31, 2003) (internal citations and quotations omitted); *see also Elfindepan*, 206 F.R.D. at 576.

> If plaintiff makes such a showing, "the burden then shifts to the producing party to justify the use of Rule 33(d) instead of answering the interrogatories." *Elfindepan*, 206 F.R.D. at 576.

*Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 277-78 (D. Md. 2012); *accord Johnson Controls, Inc v. Great Am. Ins. Co.*, No. 2:20-cv-3029-RMG, 2021 WL 5918620, at *5 (D.S.C. Mar. 29, 2021) (summarizing the two-part test and describing the requesting party's burden as showing that "a Rule 33(d) response is an inadequate means of answering the interrogatories, 'whether because the information is not fully contained in the documents, is too difficult to extract, or other such reasons'") (quoting *Hege v. Aegon USA, LLC*, No. 8:10-cv-1578-GRA, 2011 WL 1119871, at *2 (D.S.C. Mar. 25, 2011)).

The Court has the Defendant's responses but not the documents referenced therein. *See* ECF 26-2. According to the briefing, Defendant responded to the interrogatories with a short description of the document referred to and its Bates number. ECF 26, at 5. Plaintiffs challenge the sufficiency of the answers to eight specific interrogatories. ECF 25 at 5. A summary of challenged responses appears below.[3]

- **Interrogatory 4**. Plaintiffs seek all "facts and circumstances that support [Defendant's] denial of the contention that Plaintiffs do not manufacture, purchase, sell, dispense, ship, store or physically handle medications[.]" Defendant provides a narrative response summarizing certain *Gilead* allegations and quoting a stipulation in that case. Defendant then "refers to" the amended *Gilead* complaint, the answer in this case, Defendant's "denial letter dates October 27, 2025, and the non-privileged claim file materials produced in response to Plaintiffs' First Set of Requests for Production." ECF 26-2 at 3-4.

- **Interrogatory 5**. Plaintiffs seek a description of "the factual basis for the assertion in the Third Affirmative Defense of your Amended Answer that the 'allegations concerning Plaintiffs' allegedly illegal international drug sourcing program arise from conduct wholly independent of, and unrelated to, any "consulting services" that Plaintiffs may provide.'" Defendant again responds in a narrative describing its reading of the relevant policy (identified by number and policy period), definitions of certain provisions, and the nature of the allegations and causes of action in *Gilead*. The response then refers to the *Gilead* complaint, the answer in this case, the October 27, 2025 denial letter, and "non-privileged claim file materials." ECF 26-2 at 4-6.

- **Interrogatory 8**. Plaintiffs seek the basis for any contention that the *Gilead* claims "do not actually or potentially allege 'personal or proprietary injury,' as those terms are defined in the applicable policy." Defendant responds by quoting the policy's definition of "personal or proprietary injury" and summarizing the causes of action

[3] Each response includes objections; this opinion omits them because they do not appear relevant to the parties' contentions or impact the Court's analysis.

in *Gilead*, which include unfair competition claims, among others. The response concludes with reference to "the Policy in its entirety," the amended *Gilead* complaint, the answer in this case, Defendant's "denial letter dated October 27, 2025, and the non-privileged claim file materials produced in response to Plaintiffs' First Set of Requests for Production." ECF 26-2 at 7-8.

- **Interrogatory 9**. Plaintiffs seek the basis for any contention that the *Gilead* claims "are based upon or arise from 'antitrust,' as that term is defined in the applicable policy." Like with the previous response, Defendant answers with narrative including a recitation of a definition from the policy and a summary of the *Gilead* causes of action, followed by reference to "the Policy as a whole," the amended *Gilead* complaint, the answer in this case, Defendant's "denial letter dated October 27, 2025, and the non-privileged claim file materials produced in response to Plaintiffs' First Set of Requests for Production." ECF 26-2 at 8-9.

- **Interrogatory 13**. Plaintiffs seek the basis for any contention "that any act or omission by [Plaintiffs] violated some provision or condition to coverage under the applicable policy." Without any narrative, Defendant refers to the policy, the *Gilead* complaint, the October 27, 2025 denial letter, the answer in this case, and "claim notes" and "claim correspondence" appearing in documents identified by Bates ranges (approximately 125 pages worth, it appears). ECF 26-2 at 11-12.

- **Interrogatory 14**. Plaintiffs seek a description of "any actual prejudice you contend each such act or omission [identified in the previous answer] caused you to suffer in your investigation defense, settlement, or otherwise of the" *Gilead* claims. Defendant's response is only a narrative, stating that it "does not concede that it is required to prove prejudice in connection with any of its defenses in this lawsuit" and that, in any event, it would rely on any developments in *Gilead*. ECF 26-2 at 12-13. There is no reference to any document.

- **Interrogatory 15**. Plaintiffs seek the basis for any contention that "any acts alleged [in *Gilead*] were not performed as part of ScriptSourcing's consultations with its clients or customers in connection with their health care programs[.]" Defendant "incorporates its responses to Interrogatories 4, 5 and 6" and refers to the *Gilead* complaint, the answer in this case, the denial letter, and "claim correspondence" in documents identified by Bates range. ECF 26-2 at 13-14.

- **Interrogatory 16**. Plaintiffs seek the basis for any contention "that application of the 'conduct' exclusion in the applicable policy can be applied to defeat any obligation to provide a defense . . . in the absence of a final non-appealable adjudication." Defendant's narrative answer describes and quotes from both a policy exclusion and certain allegations in *Gilead*. The response then refers to the *Gilead* complaint, pleading and motions in this case, the denial letter, and "claim correspondence" identified by Bates range. ECF 26-2 at 14-15.

The answers all reflect a similar structure: first are objections, second is a narrative that provides the basis for contentions in the interrogatory, and last are references to certain documents. Almost every challenge response invokes pleadings in this case and *Gilead* as well as an October 27, 2025 denial letter issued by Defendant. Certain responses also include reference to the "non-privileged claim file materials" produced in discovery, the policy itself, and/or specific documents identified by Bates numbers. Only one answer—to Interrogatory 13—lacks any narrative at all. Four responses include a general reference to the claim file without any specific Bates numbers. But those references follow a narrative that cites the policy or some other document.[4]

Plaintiffs do not indicate that Defendant failed to provide the referenced documents; their argument is that the references are improper. This Court has recognized that "a document dump of thousands of documents will not suffice" for purposes of Rule 33(d). *Minter*, 286 F.R.D. at 278-79. Because Defendants represent that the entirety of its production is less than 1,000 pages, the concern reflected by *Minter* and other cases seems absent from this situation. *See Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. SAG-16-3431, 2018 WL 5892791, at *5 (D. Md. Nov. 9, 2018) (production of more than 16,000 unorganized documents, some of which were inaccessible or password protected, insufficient to support reference pursuant to Rule 33(d)). While *Elfindepan* expressed concern about "[d]ocument dumps or vague references" to a group of documents without some specification of documents, 206 F.R.D. at 576-77, the use of Bates ranges and the size of the document production here suggest that Defendant's actions do not rise to the level that animated the concerns in that case. Based on the parties' representations, the Court finds no reason to conclude that the referenced documents were not provided, not organized in some other rational manner, and neither illegible nor otherwise inaccessible.

Plaintiffs' position appears to be that Rule 33(d) references are, as a bright-line rule, improper in response to "contention interrogatories."[5] *See Elfindepan*, 206 F.R.D. at 577 (interrogatories seeking contentions and statements of fact "do not lend themselves to answer by use of Rule 33(d)"). There does not appear to be a consensus on whether Rule 33(d) responses are *per se* improper, especially when combined with a narrative answer. *Compare Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594 (D.D.C. 2016) ("'[C]ourts have consistently held that [Rule 33(d)] cannot be used with respect to contention interrogatories,' like those at issue here." (quoting *Fleming v. Escort, Inc.*, No. CV 09-105-S-BLW, 2011 WL 573599, at *2 (D. Idaho Feb. 13, 2011) (second alteration in original)) *with Safety Today, Inc. v. Roy*, No. 2:12-cv-510, 2014 WL 12749231, at *2 (S.D. Ohio Feb. 11, 2014) (recognizing existence of cases that "espouse a rule

---

[4] In at least one "contention interrogatory" response that Plaintiffs do not contest—Number 12—Defendant provided a narrative followed by reference to the policy, the *Gilead* complaint, the denial letter, and documents identified by Bates number. The Court discerns no meaningful difference between the structure of this unchallenged answer and most of the challenged answers.

[5] Myriad opinions address the purpose of contention interrogatories and when they are or are not appropriate. *See, e.g.*, *Pasternak v. Dow Kim*, No. 10 Civ. 5045, 2011 WL 4552389, at *2-3 (S.D.N.Y. Sept. 28, 2011). Because the parties' arguments focus only on the sufficiency of Defendant's responses, the Court does not examine whether the interrogatories are appropriate.

that [a Rule 33(d)] response is not well-suited" to contention interrogatories and observing that none conclude that such a response is never acceptable). There being no binding authority applying such a bright-line rule, the Court will not apply one here. But the Court is mindful that courts have, in general, scrutinized the use of Rule 33(d) responses in the context of contention interrogatories. *See Ayers v. Continental Cas. Co.*, 240 F.R.D. 216, 226 (N.D.W. Va. 2007); *United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 419 (D. Md. 2005). As courts in this circuit have acknowledged, mere reference to documents may offer little, if any assistance in understanding factual contentions, forcing the requesting party to engage in telepathy to understand their opponent's position. *See Elfindepan*, 206 F.R.D. at 576; *United Oil*, 227 F.R.D. at 419. Thus, it is necessary to consider whether, when read as a whole, Defendant's answers provide the requested information.

With one exception, Plaintiffs received a narrative answer before any reference to documents. Plaintiffs do not explain how the inclusion of references—several of which identify a discrete document or specific page ranges—undermine or obfuscate the accompanying narrative explanations. The Court does not read Plaintiffs' authority as prohibiting Defendant's attempt to combine a narrative response with references to a limited number of business records. In *Elfindepan*, which Plaintiffs cite, the court explained that a Rule 33(d) reference "may not be used as a substitute" for answering contention interrogatories because "[o]nly [the responding party] can identify its own contentions and the burden on [the requesting party] to try and divine [the respondent's] contentions from documents obviously imposes a greatly unequal burden on [the requesting party]." 206 F.R.D. at 577 n.5. The situation before the Court is not exactly the same—in all but one of the challenged answers, a narrative that identifies the reasons for contentions precedes the references. In general, the responses do not send Plaintiffs on a fishing expedition through an undifferentiated mass of documents, left to guess the basis for Defendant's contentions without any meaningful guidance from the Defendant. *See* Fed. R. Civ. P. 33(d) (permitting reference to records "if the burden of deriving or ascertaining the answer will be substantially the same for either party"). Even if references alone may be inappropriate, the inclusion of a narrative here lessens any burden on the requesting party in understanding the basis for contentions.

That said, there are some problems with the responses. First, pleadings are not "business records" and thus do not fall within the scope of Rule 33(d). *See, e.g.*, *Elfindepan*, 206 F.R.D. at 577-78 (collecting cases); *Smith v. Trawler Capt. Alfred, Inc.*, No. 2:12-CV-2866-DCN, 2014 WL 1912067, at *3 (D.S.C. May 13, 2024). Therefore, references to pleadings in this case or in *Gilead* cannot form or inform a proper and sufficient response under Rule 33. However, the policy and claim documents would appear to be Defendant's business records. Therefore, they appear to be the types of records contemplated by Rule 33(d).

Second, some of the references to business records are general and lack identification of specific pages or portions containing the responsive factual information. Combined with the preceding narrative, Defendant's responses citing specific pages or portions of records can be sufficient in this context so long as the information provided makes clear the information sought. *Cf. Elfindepan*, 206 F.R.D. at 576 ("Crucial to this inquiry is that the producing party have adequately and precisely specified for each interrogatory, the actual documents where information

will be found."). The same is true, in this context, for the reference to the denial letter. Although the Court does not have the letter in the record, it is reasonable to conclude that a coverage denial letter is targeted to a specific issue—likely the one litigated in this case—and is unlikely to be so lengthy or broad that Plaintiffs would suffer a greatly unequal burden in reviewing the document and understanding how it informs or explains Defendant's contentions in this case. However, a general reference to policy and claim documents does not suffice. Absent an explanation from Defendant that the answer to a given interrogatory is the *entirety* of the policy or related documents, the Court will require Defendant to specify—like it did in other answers—which portions of the referenced documents contain the facts sought by the interrogatories. This will be necessary for the responses to Interrogatories 4, 5, 8, and 9.

Third, one answer does not contain any narrative. A coverage dispute involves a policy that—one would presume—both the insured and insurer have read and interpreted yet disagree about such interpretation. Interrogatory 13 seeks the basis for Defendant's contention that Plaintiffs' act(s) and omission(s) violate a condition to coverage. In bringing this suit, Plaintiffs believe they qualify for coverage. Defendant cannot rest on pointing Plaintiffs to documents that Plaintiffs read differently than Defendant; this would force Plaintiffs to guess about Defendant's reasoning. Defendant must provide an explanation for its contentions.

On this record, considering the narrative portions accompanying most responses, Plaintiffs have not met their burden to demonstrate that *all* of the challenged responses are insufficient. *Cf. Schaeffer*, 2023 WL 4421407, at *2 (finding responses insufficient under Rule 33(d) "in the absence of Plaintiff's production of [the referenced] records"; "To the extent Plaintiff is in possession of such records and were to produce them in this case, Rule 33(d) might well allow him to point to such records as part of his response"). But some will require additional supplementation. Defendant shall supplement its response to Interrogatory 13 with a narrative, such that the response does not rely entirely on Rule 33(d) references to explain factual contentions. Defendant must also supplement any references to the policy, the "claim file," or any "claim correspondence" that lack specific Bates ranges. While the overall universe of documents is not as substantial as in those cases that have decried document dumps, Defendant must provide as much specificity about the location of the requested information as possible, to ensure that Plaintiffs' ability to identify the responsive facts is not substantially greater than Defendant's ability to identify and explain them.

For these reasons, the Court will grant in part Plaintiffs' request and direct Defendant to supplement responses to Interrogatories 4, 5, 8, and 9 to include specific page ranges for the referenced business records and to supplement the response to Interrogatory 13 to include a narrative answer. Plaintiffs' request regarding Interrogatories 14, 15, and 16 are denied without prejudice, as Plaintiffs have not demonstrated how those answers are insufficient in answering the contention interrogatories. However, if, after reviewing the responses and referenced documents in those answers, Plaintiffs identify (a) missing documents, (b) that the responses lack sufficient detail to locate the referenced documents, or (c) that the specified page ranges obscure the contentions, they may revisit this issue. In doing so, Plaintiffs shall be prepared to specify which responses include insufficient references, how those references are insufficient to enable Plaintiffs

to "locate and identify [responsive facts or contentions] as readily as" Defendant, or how the referenced documents are devoid of responsive information. The parties shall meet and confer before presenting the issue to the Court again. During any meet and confer, Plaintiffs shall consider, in addition to the issues discussed above, how any use of Rule 33(d) renders any accompanying narrative response inadequate. And Defendant shall consider whether any use of Rule 33(d) properly relies on business records within the meaning of that term, whether any references identify only those portions of documents that are responsive, and whether the documents contain all of the information requested without Plaintiffs having to guess about the bases of any contentions. Any further litigation on this issue will require Plaintiff to demonstrate the inadequacy of any interrogatory response and Defendant to justify its use of that rule in lieu of a traditional narrative response.

* * *

Despite its informal nature, this letter opinion should be flagged as an opinion and order of the Court denying Defendant's request for extrinsic evidence and additional discovery responses from Plaintiffs; bifurcating discovery on Plaintiff's counsel's invoices and deferring the same until the coverage question is resolved; and granting in part and denying in part without prejudice Plaintiffs' request for Defendant to supplement its interrogatory responses.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge